**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| LAURA MCGHEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:09CV493 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Laura McGhee, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on June 12, 2006, claiming disability due to fibromyalgia, chronic migraines, subependymoma[2] status post surgery, obesity, and depression, with an alleged onset date of October 1, 2005. (R. at 104-108, 125-26, 487-92, 530-31.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 38, 40, 61-69.) On September 12, 2007 and again on September 11, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 70, 565-94.) On November 26, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 20-31.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 8-11.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by

---

[2] An ependymoma is an abnormal growth of tissue composed of differentiated cells of the lining membrane of the ventricles of the brain and of the central canal of the spinal cord. Dorland's Medical Dictionary 624 (30th ed.). A subependymoma is an ependymoma in which there is a diffuse proliferation of subependymal fibrillary astrocytes among the ependymal tumor cells. Id. at 1778-79.

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[5] based on an assessment of the claimant's residual functional capacity (RFC)[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 23.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of obesity, subependymoma status post surgery, fibromyalgia, migraine headaches, and depression, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 23-25.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she was limited to simple, unskilled work requiring limited contact with the general public. (R. at 25-29.) Additionally, the ALJ found that the Plaintiff could not work around hazards such as unprotected heights and dangerous or moving machinery, that she could not climb at all, and that she could bend, stoop, and squat only occasionally. (Id.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a school bus driver, corrections officer, or mental health technician because of the levels of exertion required in each position. (R. at 29.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the

national economy that Plaintiff could perform. (R. at 29-30.) Specifically, the ALJ found that Plaintiff could work as an inspector, assembler, and hand worker. (R. at 30.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 30.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues: (1) that the ALJ failed to give appropriate weight to the evidence of Plaintiff's mental impairment; and (2) that the ALJ failed to properly evaluate the Plaintiff's migraine headaches. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 5-7.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-16.)

**1. Plaintiff contends that the ALJ failed to give appropriate weight to the evidence of Plaintiff's mental impairment.**

The Plaintiff contends that the ALJ improperly weighed certain neuropsychological testing that was performed in February and March 2008. (Pl.'s Mem. at 5-6.) In support of this contention, the Plaintiff notes that she presented the testimony of Dr. Sherry Fox, an expert in brain tumor difficulties, and that the Commissioner conducted no evaluation of the Plaintiff's neuropsychological functioning after Plaintiff's second brain surgery in 2007 and the neuropsychological tests conducted in 2008. (Id.) The Plaintiff asserts that, therefore, the ALJ's "hypothetical assessment that [Plaintiff] was limited to 'simple unskilled' work requiring limited contact with the general public" has no foundation. (Id.) Additionally, the Plaintiff argues that

7

the ALJ improperly refused to let the VE consider her neuropsychological test scores at the hearing. (Id.)

The Plaintiff's argument is unclear, and she cites no legal authority aside from a brief reference to the regulations at 20 C.F.R. § 404.900(b), which describe the nature of the administrative review process, i.e., that it is not adversarial in nature. The Court nevertheless construes the Plaintiff's argument to be, in essence, that the ALJ improperly weighed the evidence of Plaintiff's neuropsychological impairment, and further that the ALJ's assessment of Plaintiff's RFC is otherwise unsupported.

Whether the ALJ improperly weighed the evidence of Plaintiff's neuropsychological impairment is not an issue that can be properly considered by the Court. As earlier noted, the Court is limited on review to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson, 434 F.3d at 653; Hays, 907 F.2d at 1456. In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589).

The ALJ considered all of the evidence available in the record, including all of the evidence specifically noted by the Plaintiff in her brief, such as the 2008 neuropsychological testing, the opinion of Dr. Morgan (the psychologist who administered the tests in 2008), and the testimony of Dr. Fox (who holds a Ph.D. in nursing and was presented at Plaintiff's hearing as an expert on brain tumor difficulties). The ALJ noted that the tests resulted in a verbal IQ score of

86, a performance IQ score of 96, and a full scale IQ of 89. (R. at 27, 443.) He further observed that, based on such test scores, Dr. Morgan diagnosed Plaintiff with cognitive disorder, depressive disorder, and anxiety disorder. (R. at 27, 444.) However, the ALJ discredited the opinion evidence provided by Dr. Morgan, giving it "only slight weight," for the reason that it was inconsistent with Plaintiff's later treatment notes and with Plaintiff's reported activities of daily living. (R. at 27) The Plaintiff does not assert any specific error made by the ALJ in evaluating the testimony of Dr. Morgan, nor does the Court perceive any error.

The ALJ also considered the testimony of Dr. Fox that Plaintiff was forgetful, maintained a house in disarray, could not handle stress; that her medications caused her to do things more slowly than most people; and, therefore, that she could not work reliably. (R. at 26, 28, 577-78, 580-81, 583.) The ALJ found that Dr. Fox had more than sufficient credentials and that she was a persuasive advocate. (R. at 26, 28.) However, he also found that Dr. Fox did not have a treating relationship with Plaintiff; but rather, she worked with Plaintiff as an advocate in helping the Plaintiff find resources, referred Plaintiff to a neuropsychologist, and provided educational support. (R. at 26, 28, 575.) The ALJ discredited Dr. Fox's opinion testimony to the extent that it was inconsistent with the longitudinal medical evidence in the record that indicated that Plaintiff experienced consistent improvement after the August 2007 surgery. (R. at 28.) Moreover, the Plaintiff does not identify any particular error made by the ALJ in evaluating Dr. Fox's testimony; nor is any error readily apparent to the Court.

Plaintiff further contends that the ALJ's "hypothetical assessment that [Plaintiff] was limited to 'simple unskilled' work requiring limited contact with the general public" has no evidentiary foundation. (Pl.'s Mem. at 6.) Specifically, Plaintiff asserts that the ALJ's

9

evaluation of her mental impairment "is not informed by any medical opinion, contains no foundation in objective testing and simply asserts a conclusion that [Plaintiff] is capable of some form of simple work with public contact." (Id.)

However, as noted by the ALJ in his decision, the records provided by Plaintiff's own treating physician (Dr. Micah Houghton) for the period from July 2007 to September 2008 reflect that the Plaintiff's mental conditions were stable on medication, that she appeared alert and cooperative at each of her appointments with him, that she experienced consistent improvement following her 2007 surgery, and that she had minimal complaints at each visit (R. at 28, 455-86.) The ALJ's finding that Plaintiff is limited to simple, unskilled work requiring limited contact with the general public is also supported by the opinion and records of Dr. Morgan to the extent that her opinion is not inconsistent with the more recent treatment records of Dr. Houghton. (R. at 442-45.) For example, Dr. Morgan indicated that the Plaintiff should utilize cognitive behavioral compensatory strategies (e.g., a calendar, day-planner, and to-do list), complete daily tasks slowly and carefully with use of frequent breaks, practice relaxation skills to avoid becoming overwhelmed, minimize distractions, and avoid multi-tasking, but she did not state that Plaintiff could not meet the very limited mental demands of simple unskilled work. (R. at 443-44.)

Plaintiff further argues that the ALJ improperly refused to let the VE consider the neuropsychological test scores at the hearing. (Pl.'s Mem. at 6.) Although the ALJ did not provide the VE with Plaintiff's test scores, his hypothetical question fairly reflected Plaintiff's mental impairment insofar as the ALJ asked the VE to consider a person "limited to simple unskilled work with limited contact with the general public." (R. at 586.) Moreover, as the ALJ

10

explained to counsel at the hearing, counsel may cross examine a VE on any functional or vocational question, but a VE is not qualified to understand and give opinions based on raw medical data. (R. at 589.) In fact, this point was illustrated by the testimony of the VE at Plaintiff's hearing. When Plaintiff's counsel specifically asked the VE to "assume a verbal IQ of 86, performance IQ of 96, full scale IQ of 89,"[7] the VE responded "I would feel much more comfortable if these were phrased in terms of vocational limitations but if a person could not follow simple directions, . . . [they] could not be competitively employed." (R. at 588-89.) The ALJ committed no error in refusing to allow counsel for the Plaintiff to show the VE the Plaintiff's neuropsychological test scores.

Inasmuch as Plaintiff's arguments go to the weight of the evidence and do not undermine the substantial evidence that supports the ALJ's decision, Plaintiff's arguments lack merit. Therefore, the Court recommends a finding that the ALJ's findings with regard to Plaintiff's mental impairment are supported by substantial evidence in the record and application of the correct legal standard.

**2.     Plaintiff contends that the ALJ failed to properly evaluate the Plaintiff's migraine headaches.**

Plaintiff also asserts that the ALJ improperly evaluated her condition of suffering from migraine headaches. (Pl.'s Mem. at 6-7.) Specifically, Plaintiff contends that the ALJ failed to evaluate whether her migraines met listing 11.03 (the listing for epilepsy). (Id. at 7.) Additionally, Plaintiff asserts that the ALJ failed to describe Plaintiff's migraine headaches in the hypothetical posed to the VE. (Id.)

---

[7] Plaintiff's counsel asked this question before the ALJ instructed him not to pose questions based on raw medical data.

### a. Whether Plaintiff's Migraines Met Listing 11.03

Plaintiff contends that the ALJ erred by failing to consider whether Plaintiff's migraines met the requirements for Listing 11.03, the listing for seizures. Plaintiff's argument overlooks the portion of the ALJ's decision in which the ALJ, in fact, analyzed whether Plaintiff's impairments met the criteria of the Listing. (R. at 24.) The ALJ found that the Plaintiff's cyst, which her doctors had opined to be the source of her migraine headaches, did not cause seizures, and therefore did not meet the criteria of sections 11.02 or 11.03. (R. at 24.)

Listing 11.03 concerns non-convulsive epilepsy and requires that the epilepsy be documented by a "detailed description of a typical seizure pattern, including all phenomena; occurring more frequently than once weekly in spite of at least three months of prescribed treatment." 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 11.03. The Listing further requires "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." Id. Plaintiff did not allege functional limitations comparable to a seizure disorder. Rather, the evidence in the record indicates that Plaintiff was able to function despite her migraine headaches, albeit more slowly. (R. at 135.) For example, Plaintiff indicated on a functional report that she is able to "function through them as best [she] can to do for [her] children." (R. at 135.) She further explained that her children have patience and "know that mommie just moves a little slower those days." (Id.) Accordingly, Plaintiff's argument lacks merit inasmuch as the ALJ did not fail to evaluate her impairments under Listing 11.03, and, further, inasmuch as the evidence in the record supports the ALJ's finding that her impairments did not meet or medically equal Listing 11.03.

**b. Whether the ALJ Posed a Proper Hypothetical to the VE**

Plaintiff also asserts that the ALJ failed to reference Plaintiff's migraine headaches in the hypothetical posed to the VE. (Pl.'s Mem. at 7). Specifically, Plaintiff contends that she suffered from migraine headaches two to three times per week, and that if she were unable to work two to three times per week due to headaches, she would be unable to perform any job that exists in significant numbers in the national economy. (Id.)

At the fourth step of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The analysis requires that the ALJ evaluate all of the factors that contribute to the claimant's RFC, as well as the "physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). In making the determination, the ALJ is permitted to utilize vocational experts, vocational specialists or other resources to determine whether a claimant can perform her past relevant work. 20 C.F.R § 404.1560(b)(2). When utilizing a VE in this capacity, the VE "may offer expert opinion in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." Id.

The ALJ determined that Plaintiff had the RFC to perform sedentary work, except that she was limited to simple, unskilled work requiring limited contact with the general public. (R. at 25-29.) Additionally, the ALJ found that the Plaintiff could not work around hazards such as unprotected heights and dangerous or moving machinery, that she could not climb at all, and that she could bend, stoop, and squat only occasionally. (Id.) The ALJ's hypothetical to the VE

incorporated each of the limitations contained in the RFC. Thus, the Plaintiff essentially argues that her RFC, and consequently, the hypothetical, should have included the limitations caused by her migraine headaches. Therefore, the issue is whether the RFC was properly determined, with little, if any weight, having been given to Plaintiff's complaints of migraine headaches two to three times per week.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms

and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

At the hearing before the ALJ, the Plaintiff testified she suffered from headaches several times per week, and that her headaches sometimes lasted for an entire day. (R. at 571.) She testified that she was seeing her family doctor (Dr. Houghton) every two months, and he provided her pain management treatment. (R. at 570.) According to her testimony, she was taking Oxycontin[8] twice per day, Hyrdocodone[9] two to four times per day, and Flexeril[10] for her headaches, and the medications made her tired and unable to function. (R. at 571-72.)

---

[8] Oxycontin tablets are a "controlled-release oral formulation of oxycodone hydrochloride indicated for the management of moderate to severe pain when a continuous, aournd-the-clock analgesic is needed for an extended period of time." Physicians' Desk Reference 2807 (64th ed. 2010).

[9] Hydrocodone is a "semisynthetic narcotic analgesic and antitussive with multiple actions qualitatively similar to those of codeine." It can produce drowsiness, changes in mood, and mental clouding, and is indicated for the relief of moderate to moderately severe pain. Physicians' Desk Reference 560.

[10] Flexeril is used for relief of muscle spasms associated with acute painful musculoskeletal conditions. Physicians' Desk Reference 1985 (58th ed. 2004).

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC determined by the ALJ. (R. at 26.) In support of his finding, the ALJ explained that documents submitted by the Plaintiff reflected a much greater level of activity than was indicated by her testimony. (R. at 26.) For example, Plaintiff reported that she attended church, did laundry, shopped, visited friends and family, cooked, drove a vehicle, used public transportation independently, got her children up and ready for school, took her children to the bus, cleaned her house, played outside during the day with her infant, read, watched television, helped her children with their homework, handled her family's finances, and balanced the checkbook. (R. at 26, 134-41, 217-220.) The ALJ found that such inconsistencies between Plaintiff's written records and her testimony reflected poorly on her overall credibility. (R. at 26.)

The ALJ's conclusion is further supported by the medical evidence of record. The Plaintiff's most recent treatment notes from Dr. Houghton, her treating physician for pain management, indicate with regard to Plaintiff's migraine headaches that she was stable with the prescribed medication. (R. at 455-86.) Additionally, the Plaintiff was seen by a Dr. Newell for a consultative examination in October 2007. (R. at 428-439.) Dr. Newell's report indicates that the Plaintiff reported headaches occurring three to four times per week, but that her headaches were relieved by Imitrex.[11] Based upon his examination of the Plaintiff and a review of her

---

[11] Imitrex is used for the acute treatment of migraine attacks with or without aura in adults. Physicians' Desk Reference 1508.

medical records, Dr. Newell further opined that Plaintiff could stand and walk approximately four hours and sit for six hours in an eight hour workday; that she could lift and carry ten pounds on a frequent basis and twenty pounds on an occasional basis; and that she can bend, stoop, and squat occasionally. (R. at 431.)

Thus, the evidence in the record supports the ALJ's finding that Plaintiff's testimony regarding the severity of her migraine headaches was less than credible. Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC are based on substantial evidence in the record, and therefore, that the hypothetical posed by the ALJ to the VE at Plaintiff's hearing was proper.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 12) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

                                                    /s/
                                  DENNIS W. DOHNAL
                                UNITED STATES MAGISTRATE JUDGE

Date: March 31, 2010
Richmond, Virginia